Roberts v. Sea-Land Services, Inc. Mr. Gilliland. Mr. Chief Justice, and may it please the Court, Dana Roberts was injured and shortly thereafter became disabled in the course of his work for Sea-Land in fiscal year 2002, but he was not awarded compensation until fiscal year 2002. The question presented here is whether the maximum weekly rate established by Section 6 of the Longshore Act that was in effect at the time his disability began, or that which was in effect at the time he was awarded compensation, governs his case. He is entitled to whichever maximum is the applicable one. Section 6C of the Act provides explicitly that the applicable maximum is that in effect at the time the claimant is newly awarded compensation. The term award or awarded in the Longshore Act has a consistent meaning throughout, contrary to the views of the Court of Appeals below, and that meaning is a compensation order filed pursuant to Section 19E of the Act, which is described in Section 19E as the order making the award. It seems to me that the two parties are at extremes and that there is, indeed, something in the middle. I mean, you say it has to be the determination of entitlement to compensation by the agency. The other side says, no, it's just entitlement, whether it's been decreed or not. Why wouldn't it be an award, however, if it was the employer that voluntarily paid the amount due, which is what he's supposed to do anyway, right? Why wouldn't that be an award of compensation? Well, because the statute, in some sense of the word award, it is. A sense that the text would bear, as opposed to the sense that the other side argues here. I think that the text will not bear that reading in particular because the payments that you are describing that could be considered an award are described throughout the Act as payments without an award. Now, how the claimant can have been newly awarded benefits at the time the employer makes a payment without an award, I think, defies the meaning of that word. Scalia. Scalia. Well, I wish you would submit the sections of the Act that use it that way, that say compensation without an award. Section 14a through e refers to compensation payments without an award. Those are the provisions, section 14a and b, direct those payments without an award. And the critical time, then, I think it's isn't it true that most compensation payments are as a result of voluntary action by the employer and not a proceeding? That is true, yes. But in those cases, when the employer said, okay, I will voluntarily make this compensation available, then the measuring, the pay would be measured by the time the employer makes the compensation available, right? I think not, because the statutory provision says it's the award that's determined. But there's no award. But there can be an award. I think that's the critical. Ginsburg. But we have, what is, I mean, there can be, but here's a person who has been injured and gets compensation without having to bring any legal proceeding for it. What is the weekly, the measure, then? It can't be an award, the date of an award, because there is no award, so what is it? The employer that wants to lock in this year's maximum rate and not have his liability progress above that simply needs to have an award entered. No, he doesn't. No, he doesn't. He can just begin payment. The C, which is the section we're talking about here, doesn't just provide for newly awarded compensation. It also says survivors currently receiving compensation for permanent total disability or death benefits. Currently receiving. Now, does that mean it has to have been decreed by the agency? I don't think so. That provision which applies, that clause, that separate clause, which is not in this case, because Mr. Scalia. I understand, but it applies to the question, it seems to me, that Justice Ginsburg asked, doesn't it? No, I think not. No. The function of that clause is that in permanent total and death cases, because there's an annual escalator provision, whatever your rate is this year is going to go up, if it's a permanent total or death case, is going to go up each October 1st by the increase in the national average rate. Scalia. But only if you've been receiving compensation. If you. Okay. If neither the employer gives you the compensation voluntarily, nor, as you contend, there has been an award by the agency, you're out. C doesn't apply, right? I wouldn't say C doesn't apply, no. How else would it apply? You are either receiving compensation, which I would understand to mean receiving it from the employer, or by reason of an award, or else you've been newly awarded compensation, which I guess means it hasn't yet been paid, but you have the award in your pocket. The function of that separate clause is for cases in which an award has been entered of death benefits or permanent total disability benefits, and everything up to that point is governed by the maximum that's in effect at the time of that. It doesn't say that, counsel. It says survivors currently receiving compensation. It doesn't say by virtue of an award. It says receiving compensation. So if the employer is paying it voluntarily, you're in there. And then it goes on and it contrasts with receiving compensation those newly awarded compensation. You're not yet receiving it, but you've been awarded it. Well, Mr. Roberts did not fall within the currently receiving compensation. I understand that, but I'm just trying to make sense out of the provision, and it doesn't seem to me to make any sense unless you read it just the way I suggested. Okay. I hope I can provide that sense. The function of that separate clause is that a claimant who has been awarded compensation at a given rate, which is the maximum at the time of the award, will continue to receive compensation. It doesn't say that. It says nothing about an award. The last part talks about an award. It says currently receiving compensation for permanent total disability or death benefits. And if you're receiving it from your employer, I don't know why that isn't covered by that. Why isn't it covered? I can certainly see that those terms would appear to apply to that situation in which the employer is paying compensation for death or for permanent total disability. That wouldn't provide us for a maximum, any applicable maximum. Scalia I don't think it affects your case. It's just a matter of understanding what this provision is talking about. Breyer Yes. And what I'm trying to say about the function of this clause is that a claimant who has been awarded compensation for permanent total disability, let's assume the employer hasn't paid anything until the ALJ issues an award, and at the time that award is issued, the maximum is $1,000 a week, and the employer was making the employee was making more than $1,500, so that maximum is the right. Scalia But if the employer has been paying voluntarily, you don't penalize the employee for not having an award, right? I mean, he's in the same position. The employer has conceded the liability. Breyer He certainly is not in the same position. Sotomayor Counsel, would Justice Scalia's reading in your judgment accept his proposition? That those currently receiving voluntary payments from the employer fall under subsection C. Would his reading require the employer every year to recalculate the benefits to the maximum that's established that year? Breyer Yes, it would. Yes, it would.  And that's why his reading goes under subsection C. Breyer And that is precisely the function of that clause. Sotomayor And so if you read it the way he does, that maximum would change each year? Breyer Yes. And for permanent total disability and death cases. Scalia I don't understand why that's so only for employment, for employer payments and not the case for awards. If that's so for the employer's payment, why isn't it so for awards that have been decreed? Why don't they change every year? Breyer They do. If the award is for permanent total disability or for death, they do. Scalia So then my reading makes perfect sense? Breyer Yes. Your reading does make perfect sense. And the function of that second, that the clause for those currently receiving compensation for permanent total or death is that even when the maximum continues to go up after the date of an award, that new maximum is the applicable one for the continuing period of disability or survival. Roberts One of the arguments on the other side that I thought made some sense was the idea that you should focus on a particular point in time when you're figuring out what the amount of the award is going to be, that it doesn't make — that it's at least odd to say, well, we're going to calculate how much you're entitled to at this point, but in terms of the applicable maximum, we're going to wait however long it takes and calculate that as of this point. Doesn't it make more sense to figure out the applicable numbers at the same point in time? Breyer Marginally more sense, perhaps so. But that is an argument that should be addressed to Congress. Congress could easily have made section 6C turn on the time of injury. Instead, they provided very explicitly this. Roberts So if we think the statute — in other words, your argument, your response is that the statute is unambiguous and it can't be read in a more sensical way? Breyer Yes. Yes. And that each use of the term award, contrary to the Ninth Circuit's view, is consistent with that. That is, whenever Congress refers in this statute to an award or compensation being awarded, it is talking about the order making the award as it's described in section 19E. Scalia You don't really have to establish that, do you? All you have to establish is that it is — there is no way in which newly awarded compensation means entitlement to compensation. That's all you have to establish. Breyer That is exactly correct. Scalia You don't have to show that it's used consistently throughout, only that it's never used to mean entitlement to compensation. Breyer That is exactly correct. Alito Are you conceding an answer to these questions that your reading doesn't really make any sense, that's just what Congress — that's what Congress did? Breyer No. I hope I'm not conceding that. Alito Well, what sense does it make? Why should the ceiling depend on whether an employee is getting compensation voluntarily from the employer or as a result of a formal award? If you have two identical, identically situated employees and one is getting the compensation without an award, one is getting it with an award, as you understand the term award, what sense does it make to treat them differently? Breyer I would say they certainly are not identically situated. The claimant who has an award — Alito They are identically situated in every respect except one. One has a formal award, one does not. What sense does it make to treat them differently? Breyer There are serious consequences of the fact that one has an award and the other is being paid only without an award. Scalia Counsel, if I understood your response to my prior line of questioning, you deny that they are treated differently. The one who is receiving compensation is treated the same, under the same provision. There are two parts to it. Survivors currently receiving compensation and survivors newly awarded compensation. Those two classes are treated exactly the same. The only one that is treated differently is somebody who is neither being paid by the employer nor has yet received an award. Breyer No. No. Scalia No? Breyer No. No. The clause that depends on whether you are currently receiving only applies to permanent total disability in death cases. In all other cases, the clause that says newly awarded is the only applicable provision. Scalia I see. Partial disability, in other words. Breyer Correct. And temporary total. Temporary total has — the rates do not go up each year. Breyer You can go back. I did have the same question Justice Alito asked, and I would like to hear the answer. The answer — I'll add one footnote, perhaps, to make it a more complete answer, and that is that it makes very little sense to me when a worker becomes disabled on January 1, 1990, for example. He is now disabled, and so we calculate what his wage was. His wage was $200 a week, and now we say, but that shouldn't exceed twice the average weekly wage, and we're not going to apply it to him. You're going to apply it to him at some random date. His wage that he's getting paid is figured out as of January 1, 1990. But the maximum that it could be is figured out as of January 1, 1998, when he finishes a proceeding. Now, I just — for both reasons, why would you distinguish and why would you get that result? For those two reasons, it doesn't seem to make much sense to me, your reading of it, while theirs does make sense. And you explain why that is. Breyer Okay. Okay. I think the point is to encourage the employer to get an award entered promptly, because that way they will lock in that early maximum rate or minimum rate. The minimum rate provision applies exactly the same way under section 6C. Kagan But I thought Congress wanted the system to operate so that people just did it voluntarily without an award. Breyer Well, they want that to happen as often as possible, but the employer has the right in any case to file a notice with the Department of Labor saying, we do not believe the claimant is entitled to compensation. Scalia It really doesn't make a whole lot of sense. I mean, it seems to me you have to acknowledge it would be a much better statute had it been written differently. And really your argument here is it's not up to us to revise the inadequacies of a statute. I mean, your argument is you just can't read the language that way, and it provides a stupid result. There are such things as stupid statutes, and this is one of them, right? Breyer I don't think it's stupid, but, yes, my basic argument is it is. Breyer So you think it is not stupid because you think it is a good idea to give a lot of work to the Department of Labor, and that all the employers who are going to do this voluntarily and there will never be a problem with it all should be encouraged to go and get a certificate from the Department of Labor. All right. I'll take that as a something. Now, why is it I can't read the statute the way that it seems to make somewhat more sense? I don't see any words here that stop me from reading it. A newly awarded compensation are the critical words. Breyer Where now, there exactly? It says, you mean in C? Breyer In C, yes. Breyer You just told me that just has to do with permanent or total disability, and this is a part of it. Breyer Now, the other clause of that provision, the one that says currently receiving compensation, that one only applies to survivors and permanently totally disabled workers. Breyer But why don't they both? I mean, as I read it naturally, it says that we now have a special thing, you know, which these people are the dead ones and the widows are getting it and the permanently disabled people, and this individual and the Secretary or his delegate is going to calculate this thing all the time, and they've got a special thing here for permanent people, permanently disabled, and they're saying as to those people who are permanently disabled, we're giving them a break, they can't look for more work, they can't look for they're dead, for example, and they can't find other sources of income, and so we say that if the average wage goes up and their wage was higher to begin with, we will raise it a bit. And that applies not only to the people who are just getting this for the first time in the relevant period, it also applies to all those who have been getting it. It applies to both groups. That makes sense to me.  For permanent total disability and death. Breyer So the whole thing applies just to the permanently disabled and the death things. What says it applies to anybody else? Now, the clause, the whole thing, the whole, the whole, all of C, that's in my thing here, that seven lines, all of C, applies to permanently disabled and those who died. Well, that's certainly no one has put forward that construction, and that would mean that there is no maximum applicable to other categories of disability, like Mr. Roberts' disability. Breyer Oh, yes. Oh, I feel slightly like an Abbott Costello movie, but I'm getting this. Sotomayor Counsel, what happens to your argument if we disagree with you that employers have a way to seek a compensation order? As I read the regulations, the only way they can do that is if the employee files a claim, and the employee's filing of the claim then sets the process in motion. I can't imagine that any employee, knowing that a future award could help them, would bother filing a claim to help the employer lock in his rate. Breyer I think, actually, my experience, my universal experience with this statute is that that is not a realistic view of what claimant's behavior is. The critical difference is an award the entry of an award does not merely confirm that the employer is making payments. It requires it to continue making those payments until Sotomayor That's not my question. Most of your argument is premised on the, I thought, that the employer could lock in his rate by seeking an award. Breyer Yes. Sotomayor to the regulations, that only employees can seek awards. What happens to your argument? Breyer Oh, I think, well, I have trouble accepting that hypothetical situation because Sotomayor As I've studied it, I think that's the case. So assume that fact to be true, that employers have no regulatory or statutory right to seek an award. They can either stop paying and have the employee make a claim or not. What does this do to your argument, if that's accurate? Breyer Nothing. It simply requires the employer to induce the claimant to file a claim if it wants to. Sotomayor By stopping payment. So that destroys the whole voluntary payment. Breyer Well, they wouldn't have to stop payments. They simply need to tell the claimant, if you don't file a claim, we're going to stop payments. Sotomayor  Breyer No, I see. Is your argument this now? I'm sorry to be so slow, but, look, there's a statute here that says compensation cannot exceed more than 200 percent of the annual weekly wage or the weekly wage. Then in 3, it says how to calculate that particular number. Then you go over to C, and C says that calculated number applies to those newly awarded compensation. And you're saying newly awarded compensation means somebody got it through an award, not somebody got it automatically. And since somebody got it, had to get it through an award, or it wouldn't apply when you just get it because they pay for it, it just doesn't apply. You have to go get the award, and the word you're turning on is newly awarded. Breyer Yes. Breyer That's the argument. Breyer Yes, it is. Breyer I, like Abbott and Costello, I don't know what I'm talking about, but I do, I do. I was, I was. Now I fully understand your argument. Scalia Counsel, could I ask you about another inconsistency in this section? We've gone over one, which I think is there. Isn't there a group left out of this thing, even under, even under the government's interpretation of it? What happens to people who are receiving compensation for temporary total disability or for partial disability? They don't, they don't come under either one of those two categories, even under the government's interpretation, right? Breyer No, I think under the government's interpretation, as under ours, they fall under those. Scalia No, they haven't gotten an award yet. They have not gotten an award yet, and they are only partially disabled or have temporary permanent disability. They're, they're not covered by C, are they? Breyer Well, they are covered by it, but before we know which year's maximum applies, an award is given. Scalia Oh, that's right. But they, they, it doesn't take effect during that year. Breyer Well, does that make any sense? No, it doesn't, but you say the statute doesn't make sense. Breyer I think it does because it encourages the employer to have an award entered so that it will have the benefit of the current maximum rate and not next year's or the years after or the years after that. Sotomayor All right, Mr. Sotomayor, if that's what you're saying, Mr. Sotomayor, go ahead. You've been, you've been waiting a while. I think the way the argument has gone so far is that we've all been saying this can't make sense, and you've been saying, as you have every right to say, yes, but this is what the statute says based on the newly awarded language. But that does assume that newly awarded can't mean an entitlement, and then you run up against some other statutory provisions where an award does seem to mean not a formal compensation order, but instead an entitlement to funds. So 908d-1, it seems as though the word award means entitlement. 910h-1, it seems as though the word award means an entitlement. And 933b, which says award in a compensation order, suggests that awards can be made in a formal order or awards can be made differently because of an entitlement that is automatically paid. So I guess there are three places that it seems to me your reading of the word, of your limited reading of the phrase newly awarded, you know, runs into problems in those three ways, and I'm left then thinking we should do what makes sense. I may have missed what the third of those was. I have the the 933b, 908d-1, and 910h-1. Oh, okay. Yes, the 9, the section 8d-1 that they are referring to, refers to an award to an employee the unpaid portion of an award to an employee who dies before that award has been paid out. Now, their reading of award in that provision is contradicted by the subsequent paragraph of the same subsection which says an award may be made after the death of the injured employee. It's 908d-3. Now, that is impossible on their reading of award on the reading they give award in section 8d-1. No, what it means in 8d-1, as throughout the Act, is an award. And if none has been entered while the claimant is still alive, it's entered after his death, and the survivors under that provision take the rest of it that had not been paid before the death. Now, we have essentially the same analysis of those other provisions. Yes, in those other provisions as well, it does mean a compensation order. If you cut it loose from that statutory foundation, we get three or four different possible meanings that the Respondents try to put on it, and we are cut loose from anything. Scalia. Well, you're making your case harder than it has to be, it seems to me, by saying that it always means an award of compensation by the agency. I think in 8d, I don't think it means that, but it certainly means an amount due and not an entitlement. It means an amount, a specific amount due. And that explains its meaning elsewhere, but that's quite different from saying that it means entitlement. No doubt it is, yes. And perhaps there may be some variation in the meaning in the other provisions that's possible. But in Section 6d, we think it has to mean the entry of an award. That's the only definite event it could refer to. Scalia. Oh, I think that's true, but only because of the earlier portion of 6c, which covers all other payments that are not by virtue of an award. Right? Yes. Receiving compensation. Yes. I would reserve what time I have. Thank you, counsel. Thank you. Mr. Palmore. Mr. Chief Justice, and may it please the Court. Petitioner's interpretation of Section 906, which hinges entirely on the date of an administrative compensation order, renders that provision impossible to apply in the many cases expressly contemplated by the Act in which there is no such order. That interpretation also creates arbitrary distinctions between beneficiaries' benefit levels based on administrative happenstance. You would hear the difference. I'm sorry. So if you're walking down the street, you're on a business enterprise, they haven't shoveled the snow, you slip and fall and you're hurt, you go home and say, good news, I've been awarded damages. The statute provides for the award of damages, and I think this is the key to this understanding how this scheme works, is understanding Section 914 and Section 913. These are at page 17a. We're not talking about how the scheme works. We grant you that it makes a lot more sense your way, but will you grant that it's not up to us to rewrite the statute? It's absolutely not up to you to rewrite the statute. Okay. So what we're talking about is whether awarded in that provision can bear the meaning that you want to give it. Let's assume that Congress passes a new statute providing for tax credits for each child, okay? My wife gives birth to a child just before Christmas, and I say, oh, goody, I've been awarded $2,000. I wouldn't say that. That's not a normal use of the language. I am entitled to it under this statute, but when the event of having a child occurs, I don't say, I've been awarded $2,000. You might say it analogously.  But that's analogous, and statutes are not written by analogy. They're written to say what they say. And I don't know anybody that would use the term awarded the way you want it used. The Chief Justice's example is another one. Oh, good, I've been awarded damages. You haven't been awarded damages. You're entitled to them. I think Justice Kagan highlighted three provisions where the statute does, in fact, use the word award to indicate a statutory entitlement. Let's go through those. I'd be glad to. And you show me how — I agree with you that they don't mean the entry of an award by the agency, but I don't agree with you that the only reading you can give them is entitlement. Well, to start with Section 933, which is at page 24A of the Government Appendix. This is one of the sections highlighted by Justice Kagan. 933 of the Gray Brief. The Gray Brief, 933B, says acceptance of compensation under an award in a compensation order filed by the deputy commissioner will have certain consequences. That expressly contemplates — this is page 24A, Justice Scalia, I'm sorry. Scalia, that there could be an award. Give me a minute. Okay. The language is important, isn't it? Absolutely. What page? Page 24A of the Appendix to the Gray Brief. Okay. Got it. Okay. And the language is? So the first sentence says, ''Acceptance of compensation under an award in a compensation order filed by the deputy commissioner shall have certain legal consequences that aren't important here.'' That sentence, even read by itself, suggests there can be an award that's not in a compensation order. Moreover, the last sentence says, ''For purposes of this subsection'', not for purposes of the entire Act, ''For purposes of this subsection, the term ''award'' with respect to a compensation order means a formal order issued by the deputy commissioner and administrative law.'' That's true. And what that means is that it can be considered an award if you've gotten it from the employer voluntarily. That is still an award of compensation. That's all that that last sentence proves. I think it contemplates — it certainly precludes, I think, Petitioner's position. Oh, yes. Yes. I agree he's wrong. Well, the actual receipt interpretation that Your Honor is advancing is not one that's been advanced in this case. It would have extraordinarily practical difficulties in application. It would be really inconsistent. No, no, no. I think he's persuaded me that in the section we're talking about, subsection C, the only meaning left for ''award'' is an award by the agency, because they're the same. Well, I'd like to try to convince you otherwise, Justice Scalia. But you have to show me one other provision at least where the only meaning you can give ''award'' is entitlement to money. Well, I think section 910H1, another provision cited by Justice Kagan, is another example. H1. H1. Upward adjustments to compensation. This is a very complicated provision, but what's important to note here is that Congress made this was a Congress' attempt to provide additional benefits to beneficiaries whose disabilities commenced before 1972. Right. They make a critical, I'm sorry, page 15A of the appendix to the Gray brief. The specifics aren't as important as the use of the phrase, and it's 1, 2, 3, 4, 5 lines from the bottom, ''or his survivor was awarded compensation as the result of death.'' So it makes a key determinant for figuring out how these adjustments are going to be made, whether someone was awarded compensation prior to October 27, 1972. There is no indication here, and it would make no sense to suggest that Congress meant to distinguish between people who had a formal compensation order and those who didn't. I think if I could go back to section Sotomayor's answer to that was that the provision also permits an entry after someone of an order after someone dies. That's his answer on some of the other provisions. The incongruity is taken care of by the Act directly. Right. But here that here, there would be no reason for someone to go in and get a compensation order, because these were long-past disabilities, and Congress was simply creating a rule for how to true up these past beneficiaries and provide them additional benefits. But I think if you would, Justice Scalia, if I could just say. Scalia, what does ''awarded compensation'' at less than the maximum rate mean? I'm not sure what that refers to. There was an old maximum. Prior to 1972, there was a $70 maximum. Right. Okay. So if someone were to get the maximum, no? Yes, but some people, two-thirds of their average weekly wage resulted in a figure below the maximum, right? So for those people, what section 910H1 did was said, if you were awarded compensation at less than the prior maximum, you were going to get an inflation adjustment. For everyone else who was already at the maximum, they got a new statutorily created time of injury, which is itself significant that Congress used that route. But there's no indication. You're right, it doesn't make sense. Well, it doesn't make sense under Petitioner's reading. I think it does make sense under our reading. Okay. And if you go to page 17a, I think these are the key provisions for understanding how section 906 works in the statutory scheme. Section 914 at the bottom of the page, 17a to the government's brief, provides that employers must pay compensation without a compensation order promptly, as soon as they have notice of an injury. B, which is on the next page, 18a, says that the first payment has to come in 14 days, within 14 days of notice of the injury, unless the employer controverts liability. So if I'm an employer, I have an employee who's injured, I've got to get out my checkbook on day 14 and start writing checks. I need to know what number to fill in. I need to know. But you're doing that without an award. Correct. So how can you say what the employer pays should be considered an award? It's without an award. Because if you don't consider that, then the statutory maximum provision is impossible to apply, because then it's unclear, and I haven't heard Petitioner answer, what the statutory maximum is if that employee who gets his first check after 14 days has not been newly awarded compensation under Petitioner's reading. Kennedy, you're saying that B overrides A. You're saying that A would be interpreted in favor of the Petitioner but for B? No, I'm saying that this is the case. Because I agree with the Chief Justice. Without an award, it seems to me it tends to help the Petitioner. That use of award clearly means compensation order. And I'm not here to suggest that the statute never uses the word award to mean compensation order. Often it does, and in this case that provision does. But the larger point is that that employer has to start payments within 14 days and he has to know what statutory maximum applies. Under Petitioner's view of the statute, there is no answer to that question, because that employee has not been newly awarded compensation. So Section 906. And in what percentage of the cases are we in that world? In a substantial majority of cases, no claim is ever filed, Justice Kagan. Page 38 of the red brief points to legislative history before Congress in 1972, which demonstrated that, and that remains the case. This is a workers' compensation scheme that encourages employers to pay without administrative compulsion. It's supposed to be simple to apply. The employer is supposed to know how much to write that check for at the time he writes that first check after 14 days. Ginsburg's reading doesn't encourage employers to pay because they can stop just by saying they can test, right? Absolutely. They have a statutory right to controvert. So your reading, I think, leads to protraction. And they get that date of injury rule, no matter how long they string it out, under your reading. If you read, what is the magic phrase, newly? Newly awarded compensation. You could say, well, that means in the case of the employer who pays promptly, pays immediately and continues to pay voluntarily, that the compensation is acquired when the employer starts paying voluntarily. But if the employer is not paying, then the compensation is newly awarded when there is an award. So I don't see why you can see what kind of problems the statute would have if we say, yes, newly awarded could mean awarded by the statute, which would be newly awarded when you're injured. But it can also mean compensation ordered by an award. So you have the employer who pays promptly can lock in that early date, but if he doesn't pay promptly, then the ceiling is going to go up until the time the award is entered. What's wrong with that reading? That's, again, a reading that hasn't been advanced in this case, but I understand Your Honor's question and Your Honor's point. I think that reading of it would be very difficult to apply, because there may be many cases where an employer will write one or two checks and then stop. There may be cases in which an employer will write a check for the wrong amount. There will later be a dispute about what the proper benefit level would be. So I think you develop a whole body of case law and controversy about what it meant for the employer to have paid. Those aren't going to be the typical cases. I think you said there may be cases, and I suppose there may be. I assume what happens, employers just don't write checks. They say, this is how we calculate what we owe you, and it is based on the maximum of this year, not any future ones. And if the employer says, no, no, no, I have a right to get, then the employer will say, well, okay, I either agree with that or not, but you don't get a check. Well, the employer would need to protect itself by writing that check unless it's a point of controvert liability. Justice Ginsburg pointed to one of Petitioner's arguments that this provides an incentive for employers not to controvert liability when they don't have a good faith basis for doing so, but section 928 of the Act provides for attorney's fees in that situation. So there's already a remedy for that kind of situation. Roberts. Roberts. And I understand the amounts at issue here. What is the usual amount that's at stake in this sort of case? We're talking about the concerns, I guess, about gamesmanship, but how much difference are we talking about? I don't know. Maybe you don't have statistics on an average. Well, we can use this case as an illustration. So in this case, Petitioner's disability began in 2002. So our view is that that's when he was initially awarded compensation, and so the 2002 maximum of $966 applies. Petitioner's view is that because he received a formal compensation order in 2007, the 2007 maximum applies, that's $1,114. So it can make a considerable difference. I think, though, that Petitioner recognized that the consequence of the time value of money, too, the consequence of the employee saying, I'm going to wait 5 years because I think the maximum is going to be a lot higher, is that he doesn't get anything in the meantime, right? It's reasonable for the employer to say, okay, if you want to wait, I'll wait. That's right. The larger point, though, is that in many cases in which compensation is paid without compulsion of a compensation order, an employee never files a claim. Section 913 expressly contemplates that by saying that an employee has 1 year in which to file a claim from an injury unless he's been receiving payments, in which case the time runs from the last payment received. Breyer, what happens, just for my technical knowledge here, the employee suffers partial disability on February 1. He then doesn't notify the employer until, let's say, February 10, and then the employer waits for a week or so and then begins to pay. Now, is the employer supposed to calculate the weekly wage that he's paying on in the week February 1 to February 10, or 3 days, he puts to the side, but the first week, or does he do it on the first week he got notice? How does that work? Well, he needs to provide, he needs to make a payment within 14 days. That's right, but I'm saying he has to write the check now, and the wage could have changed in those two weeks. If from the first week he didn't get the notice, then the second week he did get the notice. Which week does he calculate the payment on? From when the disability commenced. All right. So you're not saying we can't, we cannot read this thing award to mean award by the employer. We can't mean it to read award by the government, in your view. We have to mean it to mean the time that he became entitled to some money. That is our submission, Justice Breyer. And then the tough thing is saying, well, that that's an award. That's what this case turns on. Well, as we, as I was discussing earlier, we think the statute sometimes uses the word statute as you pointed to some situations, which say we have situation 3 and 4, and they're not present here. But in situation 3 or 4, award does mean this. All right. That's. Right. I think if I can show you, if I can show you. You don't have another example of a situation where award did mean, and so you're saying there's some others where award doesn't mean it. Okay. Well, I think there are other words. Breyer. What's the most analogous thing you can find anywhere where award has referred to the time a person became entitled to a thing prior to the time anyone was became obliged to give him some money? Well, I think even if that time first was the period for way for calculating the money. I think 910H1 is that example, and I hesitate to go back into the weed head provision. No, no, don't do it again. But the first sentence says, it talks about those who were entitled to total permanent disability or death, which commenced. So it talks about commencement of entitlement. It says it was awarded compensation. And then later it uses awarded compensation. If I could go quickly back to the claim issue. Okay. Your brief seems to use the newly awarded compensation, your meaning of it, at the time of injury, the time of disability, the time of entitlement to compensation, and it seems to use those terms interchangeably. What term are you settling on and why? Okay. I think we addressed this in footnote 9 of our brief. It's the commencement of entitlement to disability benefits, which is almost always going to be when disability itself commences. Petitioner has pointed out that there is an idiosyncratic set of cases in which if a disability lasts more than 3 days but fewer than 14, you're not compensated for those first 3 days. So in that unusual circumstance, it would be day 4. But the employer who writes that check at day 14 is going to know. That's the key. You can do it. You can say it's the time that the statute awards him the compensation. That's the English language. That's correct, Justice Breyer. And I think that's the statute that's doing the awarding. To make his – I think Petitioner has developed kind of a procedural workaround to the problem created by his interpretation of the statute, which is that he needs a compensation order in every case to make the scheme make sense. To get a compensation order, he needs a claim in every case. And as the colloquy before reflected, the way he can get a claim in every case, because in many cases claims are not filed today, is that the employer must threaten the disabled employee to cut off benefits if that employee doesn't file a claim, threaten to controvert liability when that employer has no good faith basis for doing so, all to get the employee to file a claim that the employee doesn't think is necessary, to get a compensation order which serves no other purpose than to trigger this maximum rate provision. That's contrary to the way this statute is supposed to work. The statute is supposed to encourage amicable agreement between employers and employees to avoid administrative process and the gearing up of the administrative machinery wherever possible. And Petitioner's proffered solution to the problem of the absence of a compensation order in every case is contrary to that, and the entire thrust of the Longshore Act as a workers' compensation scheme. Ginsburg. And your answer to the problem of an employer protracting, so it doesn't have to pay sooner, you can wait until later, there would be no penalty as long as the employer says I'm, I'm contesting what you say, the attorney's fees, that's, is that? Attorney's fees and interest, both of which are generally applicable remedies that apply to cases that don't implicate the statutory maximum or the statutory minimum. This Petitioner's solution using his reading of the statute to deal with employer delay is over-inclusive and under-inclusive. It's over-inclusive because it's going to deal with cases in which there hasn't been delay by any responsibility by the employer, but there's been administrative delay, there's been a dispute. But it's also under-inclusive in that it only deals with those small number of cases that deal with the statutory maximum or minimum. Thank you, Mr. Palmore. We'll let Mr. Keisler speak for a little bit. Mr. Keisler. Mr. Chief Justice, and may it please the Court. I'd like to begin, if I may, by addressing Justice Scalia's and the Chief Justice's questions on whether the term award can bear the meaning that we ascribe to it, and then explain why, since it can bear that meaning, this is the only sensible interpretation of the Act. First, it is not uncommon, Your Honor, to use the term award to describe a benefit conferred by a statute. The dictionary definition is a benefit conferred. Your Honor, Justice Scalia used a formulation. What if a statute awards a tax credit? Well, the Court's decision in New Energy Company v. Limbach began, an Ohio statute awards a tax credit to certain producers of ethanol. I think even Your Honor was the author of that decision. It is — Scalia, I agree with that. You can speak of the statute as awarding something, but when you use the phrase newly awarded, you're not referring to the enactment of the statute. You're referring to the time at which the person qualifies under the statute. And I don't know any usage of that sort that a person would. You know, when my wife has a baby, I've been awarded money. You haven't been awarded money. I think the party becomes newly awarded at the time the party becomes disabled, and therefore there is an amount due under the statute. Yes, that's what you say, but I don't know any common usage that employs the term award.  But about the business, was newly awarded the tax credit at the time they made the deduction? At the time they became qualified for what the statute required them to do to get the tax credit, yes. And that is how it is used in 910H1. As Justice Kagan said, it's how it's used in 908. And section 933 specifically provides Petitioner's definition of award, a formal compensation order, but says it is only for purposes of this subsection. But it's not the way it's used in 914. That's correct. And that's why this is a case like Robinson v. Shell Oil, in which the word employer was used throughout Title VII in different ways. And what the Court said is you then have to look at the context of the individual provision in which the word appears that you're construing to determine how the word is being used in that particular provision. And here, the most fundamental reason why it is an untenable construction of this Act to rely on the date of a compensation order to determine the applicable maximum rate is that then the Act would be silent as to the maximum rate in the vast majority of instances in which compensation is paid. Because as Mr. Palmore said, in the vast majority of instances, no claim is filed. And as Justice Sotomayor pointed out, when no claim is filed, no compensation order will ever be issued. And that's not an accident. That is a function of a very central feature of the Act's design that Petitioner's interpretation is entirely at odds with. The Act is designed to enable compensation to be calculated precisely and as early as possible so that the money can get into the employee's hands very quickly and with a minimum of instances in which the administrative machinery has to be invoked. That's why the norm is no compensation order. And so Petitioner's interpretation is counter to that in at least two respects. It relies on the existence of a compensation order, which in most instances won't and shouldn't issue. And it would maximize, rather than minimize, the number of instances in which someone has to go and get an order to force compensation orders out of the system to make Petitioner's interpretation work, even though everything is happening exactly as the Act says it should. The employer is voluntarily paying exactly the amount that the employee says is due, and there's no need to get the agency involved. Roberts. How much of a practical problem is this? I understand the amounts are here, but it's 5 years. And apparently, the employee was happy to wait 5 years to get an award. Normally, if you're an employee and you're disabled and the employer says, well, here's what we're going to give you, and it's based on the maximum, the latest we have, you're not going to say, I'm going to wait, these wages are going to go up nationally, and I'm going to wait a year, maybe I'll wait 4 years, because I think there's a trend on national average wages, and I'm going to cash in on that. I'm going to be without money for the next 4 years and I'm disabled, but, I mean, that doesn't sound to me to be a plausible situation. But if Your Honor thinks about the situation in which the employee is voluntarily receiving from the employer everything that the employee agrees is due, then the question is, in that circumstance where the employer is doing everything right, what can the employer do to force out of the system a compensation order that will lock in the maximum rate? And Petitioner's solution to that problem evidences the problem with his position. Well, no, I mean, I don't know what the employers do, but usually in a situation like this, the employers are good lawyers and they write at the end of the check, you know, this is in full satisfaction of any claims under the whatever. But there is no compensation order until that employee files a claim, and under Petitioner's interpretation, there would therefore be no knowable maximum rate. And Petitioner's solution to that problem on page 16 of his reply brief is to say that the employer should threaten a bad faith cutoff of funds. The employer should say, I will cut you off unless you file a claim. That's bad for everyone. It's bad for the employee who has access to payments delayed. It's bad for the employer who apparently is being told it must controvert liability in bad faith because the employer doesn't, in fact, disagree that the employee is entitled to liability, or face a 10 percent penalty for cutting off the employee without a basis for controverting liability. And it's bad for the agency who suddenly has all these claims filed, all in a situation in which everything is working exactly as the Act intends. Scalia. Give me your example again of a ward used as a lawyer. 91081. No, no, no, not from the statute. New Energy Company v. Limbach. It was a Commerce Clause case from, I think, 1989, in which Your Honor began the opinion by saying, to describe the setup, an Ohio statute awards tax benefits to, and then described the category of energy producers who could take advantage of the tax benefit. And I think those energy producers ---- No, that wasn't it. You gave another example. Robinson v. Shell Oil? No, not a case. Okay. It's just an example you made up out of your fertile imagination, which seemed to be pretty good. But I forgot it. And it was an example of the employee who is receiving voluntary payments and everything is proceeding the way the Act intended, but the employer, in order to know what its maximum rate will be, in order not to be surprised 5 years hence by a maximum rate that only then can be known, has to force a compensation order out of the system. And the only way Petitioner says the employer can do that is by threatening a bad-faith cutoff of funds. Whether it happens frequently or infrequently, Mr. Chief Justice, I think an interpretation that relies on a mechanism that is so obviously counter to the way the statute is supposed to function is, by virtue of that, an extremely unlikely and unnatural interpretation. Ginsburg But what percentage of the compensation cases involve the statutory maximum? Because if your pay is less than the statutory maximum, this issue doesn't come up. In 1972, Congress was told that it would be about 10 percent. My understanding is since then it's grown so that I'm told that about 20 percent of cases today require application of the maximum rate. Does the maximum always go up? Ever since 1972, each year's maximums calculated by the Secretary of Labor has been higher than the preceding year. Theoretically, it can go down. Theoretically, it can. It never has. If the Court has no further questions. Mr. Kessler, if I could just go back to this language. If, according to Justice Scalia's old opinion, the statute awards compensation at the time of disability, essentially what you would be saying is that an employer who becomes disabled in a certain year is awarded compensation at that time. Is that right? That's right, Your Honor. Yeah, but I didn't say in that opinion that the employer in that case, or whoever it was that was entitled under the statute, was newly awarded it. I agree the statute awards it, but when you say somebody is newly awarded, you're talking about an event at that time. And that's a different usage. I think the function of newly in this statute is something different, Justice Scalia. And that relates to the questions that Your Honor and Justice Breyer were asking about the relationship between the currently receiving clause and the final clause. I think the currently receiving clause, which relates to those with permanent total disability and death, is an adjunct to another provision of the Act, Section 19F, which provides for a COLA, a cost of living increase every year for that narrow subset of the most disabled of employees. They and they alone get that annual bump-up. And so that currently receiving clause is written for that category to make sure that their bump-up isn't capped by a static maximum rate. The other part of the clause, newly awarded compensation, is about everybody else. And I think the use of the word newly there is just to distinguish it from the currently receiving clause, which is escalating year by year, and those newly awarded compensation, meaning at one point, fixed in time, only when you are newly awarded compensation are you then going to have your maximum rate fixed, and then, and both Petitioner and we agree, whatever it's fixed at, whatever year, that stays the same for the duration of your collection of compensation. If the Court has no further questions, I thank the Court. Roberts. Thank you, counsel. Mr. Gillilan, if I got that right, you have two minutes remaining. Counsel, let's assume an employer pays, continues to pay over a period of time, and the employee needs more money, goes in and says, you owe me more money, I'm going to make a claim. The board says, no, he doesn't owe you more money, he was paying the right amount, and so you're not entitled to the $1,200 you're asking for, you're only entitled to the $1,000 he was paying. Under your view, if that happened 5 or 10 years after the payment started, would the employer be liable for the higher average 10 years later? Only, of course, if the employee's own wages at the time of the injury qualified for that matter. Assuming it does, but the answer is yes? Yes. So what stops an employee from simply doing what I said? What stops an employee from kicking up his own maximum whenever he chooses to do it years and years later? Well, I think in that situation, the claimant hasn't triggered that award. In fact, the claimant has triggered the maximum that's in effect at the time of that award that only makes – it's an award only of what the employer has been paying. It's not a denial, as it's characterized in the government's brief, but it is an award only of what the employer has been paying. If the claimant did not bring it forward with that and the employer let it go for still further years, then even a subsequent year's maximum would be the answer. Sotomayor, if we find any ambiguity in the statute, in the statutory language, would it then make more sense to adopt your meaning or the government's? Given all of the factors that the government argues, counsels in its favor? I think each of those arguments is fallacious. They misdescribe the statute in their reasons why this is not a sensible provision. But even if there is an ambiguity, before we lose that ambiguity, the other part of the statute, the possible meanings of newly awarded, have got to include what they say the test is. Thank you, counsel. The case is submitted.